**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

                                    :
LUIS CAMINO,                        :
                                    :   CIVIL ACTION NO. 05-4201 (MLC)
     Plaintiff,                     :
                                    :     AMENDED MEMORANDUM OPINION
     v.                             :
                                    :
JEFFREY SCOTT, et al.,              :
                                    :
     Defendants.                    :
_____:
```

**COOPER, District Judge**

The defendants, Joseph Rizzo ("Rizzo"), Jeffrey Scott ("SCO Scott"), David Bailey ("SCO Bailey"), Richard Kokowski ("SCO Kokowski"), Eric Lange ("SCO Lange"), and Timothy Slack ("SCO Slack") (collectively the "defendants"), move (1) to dismiss the complaint filed by the plaintiff pro se, Luis Camino (the "plaintiff"), for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or (2) in lieu of an answer, for summary judgment pursuant to Rule 56(c). (Dkt. entry no. 14.) The Court, for the reasons stated herein, will (1) grant without prejudice the part of the motion seeking summary judgment for the plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), (2) deny the part of the motion seeking summary judgment (a) for the plaintiff's failure to assert a cognizable due process claim, (b) on the plaintiff's Eighth Amendment claim because the claim was precluded by the

defendant Norma Morales's ("Morales") findings, and (c) on the plaintiff's Eighth Amendment claim because the defendants did not subject the plaintiff to cruel and unusual punishment because, inter alia, the plaintiff failed to show that he suffered more than de minimis injuries, as moot, and (3) deny the part of the motion seeking to dismiss under Rule 12(b)(6) for failure to state a claim, and any relief for Rizzo, as moot.  The Court will also grant summary judgment in favor of the defendant V. Percorella, a/k/a Pecorella ("SCO Pecorella") on the aforementioned ground under the PLRA.

## BACKGROUND

The plaintiff is a prisoner who, beginning on February 10, 2004, was incarcerated at the Mountainview Youth Correctional Facility ("MYCF") in Annandale, New Jersey.  (Compl., at 5-6; Affidavit of Gerri Dilts ("Dilts Aff."), at ¶ 3.)[1]  SCO Scott, on the afternoon of June 14, 2004, issued the plaintiff an "on the spot" violation for having an unauthorized pen and sanctioned him to work four hours of extra work duty.  (Compl., at 6; Dilts Aff., Ex. A, at 11, 6-14-04 Incident Rep. signed by SCO Scott ("SCO Scott Incident Rep."); Affidavit of Jeffrey Smith ("J.

---

[1] The plaintiff was transferred from MYCF to the Albert C. Wagner Youth Correctional Facility ("WYCF") in Bordentown, New Jersey, on June 15, 2004.  (Affidavit of Sherry Jones ("Jones Aff."), at ¶ 3.)  He was then transferred on August 12, 2004, to the New Jersey State Prison ("NJSP") in Trenton, New Jersey. (Compl., at 5; Affidavit of Brenda Smith ("B. Smith Aff."), at ¶ 3 & Ex. C.)  The plaintiff is currently confined at NJSP.  (B. Smith Aff., at ¶ 3 & Ex. C.)

Smith Aff."), Ex. A, Special Investigative Div. Admin. Investigation Report ("SID Report"), at 1, 4.)[2]  The plaintiff, at approximately 3:20 P.M., stated to Richard M. Cole ("Cole"), counselor at MYCF, that SCO Scott had threatened to "beat him up and set him up."  (Compl., at 6; Dilts Aff., Ex. A, at 39, 6-14-04 Incident Rep. signed by Cole ("Cole Report").)[3]  Cole notified his supervisor, Sergeant Scott Curtis ("Sgt. Curtis"), of the plaintiff's concern, and Sgt. Curtis went to "Unit 9" — in which the plaintiff's cell was located — to investigate.  (Dilts Aff., Ex. A, at 40, Sgt. Curtis's Comments on Cole Report.)

　　SCO Scott, at approximately 5:00 P.M., ordered the plaintiff out of his second-floor cell to "start his OTSC charge." (Compl., at 6; SCO Scott Incident Rep.)  SCO Scott escorted the plaintiff from his cell to the Cottage 9 stairwell of MYCF. (Compl., at 6; SID Report, at 1.)  The plaintiff alleges that SCO Scott pushed him down the stairs, and then began kicking and stomping on him.  (Compl., at 6.)  The plaintiff further claims that SCO Bailey "joined him in the assault," and that SCO Scott and SCO Bailey "tried to justify their actions by falsifying

---

　　[2] An "on-the-spot correction" ("OTSC") is "the immediate imposition of a sanction upon an inmate for the violation of a minor prohibited act."  N.J.A.C. §§ 10A:1-2.2, 10A:4-1.3.

　　[3] After speaking with Cole, the plaintiff returned to his cell.  (Compl., at 6.)

charges that [the] plaintiff threw cleanser on them." (Id.)[4] (Id.) The plaintiff also contends that "[o]n the way to detention, while in handcuffs and offering no resistance [SCO Pecorella and the defendants SCO Kokowski, SCO Lange, and SCO Slack] threw and slammed [him] against walls along the way." (Id.)[5] The MYCF medical department reported that the plaintiff (1) had a three-inch red mark on his upper left chest, and (2)

---

[4] SCO Scott asserted that the plaintiff — who was walking in front of him — picked up a can of powdered detergent, turned around and threw the contents of the powdered detergent into his face. (SCO Scott Incident Rep.; Dilts Aff., Ex. A, at 13-18, 6-14-04 Photos of SCO Scott, SCO Bailey, and Cottage 9 stairwell.) SCO Scott claims that he then called to SCO Bailey for assistance. (Id.) SCO Bailey states that he responded to the call by running to the landing between the first and second floor. (Dilts Aff., at Ex. A, at 9, 6-14-04 Incident Rep. signed SCO Bailey ("SCO Bailey Incident Rep.").) SCO Bailey claims that he saw the plaintiff standing next to SCO Scott with the can in his hand. (Id.)
SCO Bailey alleges that as he reached for his radio, the plaintiff (1) came at him swinging his arms, (2) struck SCO Bailey in the face, and (3) tried to grab the radio away from him. (Id.) SCO Bailey made an emergency call for assistance from other officers. (Id.) SCOs Slack, Kokawski, Lange, and Pecorella responded to the call and attempted to restrain the plaintiff. (Dilts Aff., Ex. A., at 22, 6-14-04 Incident Rep. signed by Sergeant J. Clark ("Sgt. Clark Incident Rep.").)
SCOs Bailey and Scott were treated in the MYCF infirmary and the Hunterdon Medical Emergency Center in Flemington, New Jersey, for "chemical conjunctivitis" of the eye. (SID Report, at 2; Dilts Aff., Ex. A., at 24-25.)

[5] The defendants claim that the plaintiff resisted being placed in restraints. (Sgt. Clark Incident Rep.) After being handcuffed and escorted off Cottage 9, the defendants assert that the plaintiff refused to walk any further by "going slack in the legs and lifting his feet." (Id.) The corrections officers then (1) placed the plaintiff face down in the grass, (2) lifted him horizontally off the ground, and (3) carried him the rest of the distance. (Id.)

complained of pain and shortness of breath.  (Dilts Aff., Ex. A, at 19.)

The plaintiff — based on his conduct on June 14, 2004 — was charged with the institutional infractions of (1) assaulting any person in violation of N.J.S.A. § 10A:4-4.1(a)(*.002), and (2) assaulting any person with a weapon in violation of N.J.S.A. § 10A:4.1(a)(*.003).  (Dilts Aff., Ex. A, at 1-6.)  The plaintiff had a due process hearing before a hearing officer, the defendant Morales, on July 13, 2004.  (Id.)  Morales determined that the plaintiff was guilty of both charges and sanctioned him to 15 days detention, 365 days loss of commutation credit, and 365 days in administrative segregation for each offense.  (Dilts Aff., at ¶ 5, Ex. A, at 3, 6.)  The plaintiff appealed Morales's decision to then-MYCF Administrator Rizzo, who upheld the decision on July 16, 2004.  (Dilts Aff., at ¶ 5, Ex. A, at 46, 52.)

The plaintiff prepared and signed the "Form to be Used by a Prisoner in Filing a Civil Rights Complaint" on August 14, 2005.  (Dkt. entry no. 1.)[6]  The plaintiff asserts claims against the defendants pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (Compl.)[7]

---

[6] The plaintiff filed the complaint on August 26, 2005. (Dkt. entry no. 1.)

[7] The plaintiff does not specifically identify any constitutional violations in the complaint, although his

5

Specifically, he alleges that (1) SCO Bailey and SCO Scott (a) assaulted him and (b) filed false disciplinary charges against him for throwing cleanser on them; (2) Morales failed to properly investigate and adjudicate the disciplinary charge; and (3) Rizzo failed to properly review his appeal. (Compl., at 6-6A.) The plaintiff seeks damages and injunctive relief (1) expunging his disciplinary record, and (2) restoring his previous status and credits exacted because of the sanctions. (Compl., at 7.)

The Court, on October 6, 2005, reviewed the complaint, as required by the PLRA, and (1) granted the plaintiff's application to file the complaint in forma pauperis, (2) allowed the excessive force claim to proceed, and (3) granted the plaintiff 45 days leave to file an amended complaint that includes a cognizable due process claim. (Dkt. entry no. 2, 10-6-05 Mem. Op. & Ord. (the "October Opinion").)[8] The defendants moved to

---

contentions of excessive force and allegations of error in his disciplinary proceeding possibly constitute claims under the Eighth and Fourteenth Amendments, respectively.

[8] The Court further ordered that, if the plaintiff failed to file an amended complaint within 45 days of the date of the entry of the order accompanying the opinion, the Court would enter an order dismissing the Fourteenth Amendment due process claim and the defendants Morales and Rizzo without further notice. (Id. at 7-8.) The order was entered on October 7, 2005. (Dkt. entry no. 2.) Therefore, the plaintiff had until November 21, 2005, to file an amended complaint. The Court, noting that the plaintiff failed to file an amended complaint within 45 days pursuant to the October Opinion, dismissed the due process claim on January 27, 2006. (Dkt. entry no. 15.)

6

dismiss the complaint or, in lieu of an answer, for summary judgment, on January 25, 2006.  (Dkt. entry no. 14.)  The defendants argue that, inter alia, the plaintiff failed to exhaust his administrative remedies as required by the PLRA.[9]

## DISCUSSION

### I.   Standard For Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  Thus, a non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

---

[9] The defendants also assert — as part of the motion — that the Court should dismiss the due process claim against Rizzo. The Court, however, has already dismissed the plaintiff's due process claims in the January 27, 2006 Memorandum Opinion and Order.  (Dkt. entry no. 15.)  Therefore, this part of the motion is moot.

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id.</u> at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted).

If a defendant relies on an affirmative defense as a basis for summary judgment, "[the] defendant must establish the absence

of a genuine issue of material fact as to each element of the defense." Harvey v. City of Phila., 253 F.Supp.2d 827, 829 (E.D. Pa. 2003). "Once the defendant meets this threshold, the burden shifts to the plaintiff to set forth a genuine dispute of material fact as to any element essential to the affirmative defense." Id. "If the plaintiff does so, summary judgment must be denied." Id.

## II. The Exhaustion Of Administrative Remedies

### A. The Exhaustion Requirement Under the PLRA

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[10] The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes such administrative remedies to be ineffective, or (2) the available administrative process cannot grant the desired remedy. Booth v. Churner, 532 U.S. 731, 739-41 (2001); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by

---

[10] Failure to exhaust administrative remedies is an affirmative defense and the defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." Kounelis v. Sherrer, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (citing Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).

[section] 1997e(a) is . . . mandatory," (2) "[a]ll available remedies must . . . be exhausted," and (3) the remedies need "not meet federal standards, nor must they be plain, speedy, and effective").  Therefore, to comply with the PLRA, a prisoner must "properly (i.e., on pain of procedural default) exhaust administrative remedies as a prerequisite to a suit in federal court."  Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).

The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.  Spruill, 372 F.3d at 222.[11]  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."  Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner is responsible for bringing a grievance to the attention

---

[11] The PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook, even if that handbook is not formally adopted by a state administrative agency.  Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

10

of the appropriate prison official so that the official has an opportunity to respond to the grievance before resorting to the court system. Spruill, 372 F.3d at 227 (citation omitted); see Porter, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"). Moreover, after filing an initial complaint, the prisoner must carry the grievance through any available appeals process. Nyhuis, 204 F.3d at 67. Thus, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. Spruill, 372 F.3d at 232.

**B.   The PLRA's Application to the Plaintiff**

The PLRA's exhaustion requirement applies only to "prisoners" who were in custody at the time they filed their original complaint in federal court. 42 U.S.C. § 1997e(a); see Ahmed v. Dragovitch, 297 F.3d 201, 210 (3d Cir. 2002) (affirming district court's denial of plaintiff-former prisoner's motion to amend where plaintiff was prisoner at time of filing complaint). The PLRA defines "prisoners" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. §

11

1997e(h).  Here, regardless of whether the Court analyzes the "custody" requirement by the date the plaintiff submitted his complaint, August 26, 2005, or the date that it was marked filed — October 11, 2005 — the plaintiff was incarcerated at NJSP. (See B. Smith Aff., at ¶ 3 (indicating that — as of January 25, 2006 — the plaintiff "is currently in custody at NJSP and has been incarcerated at NJSP since August 12, 2004").)  Therefore, the PLRA's exhaustion requirement applies to the plaintiff's Section 1983 claims.

    **C.**    **Whether the Plaintiff Exhausted Administrative Remedies**

The defendants contend that the plaintiff failed to "use the remedy procedures at [MYCF, NJSP, or WYCF] to voice his complaints regarding (1) [his] alleged[] assault[] by [SCOs] Scott and Bailey, [or] (2) . . . the MYCF staff us[ing] excessive force when restraining him."  (Defs. Br., at 16.)  The defendants have the burden to demonstrate that the plaintiff failed to exhaust his administrative remedies.  Kounelis, 2005 WL 2175442, at *6; see Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (explaining that prisoner's failure to exhaust administrative remedies is affirmative defense that must be pled and proven by the defendants).  The defendants have satisfied this burden, and the plaintiff has failed to provide any contrary information or documentation that he did exhaust his administrative remedies before bringing this action.

The defendants point out that MYCF, WYCF, and NJSP have adopted inmate handbooks setting forth the rights and privileges of inmates at each facility. (Dilts Aff., at ¶ 6; Jones Aff., at ¶ 4; B. Smith Aff., at ¶ 4.) The defendants assert that all prisoners, including the plaintiff, receive a copy of an inmate handbook while incarcerated at MYCF, WYCF, or NJSP. (See Dilts Aff., at ¶ 6 (explaining that copy of MYCF inmate handbook is provided to all inmates at MYCF); Jones Aff., at ¶ 4 (stating same concerning WYCF); B. Smith Aff., at ¶ 4 (stating same regarding NJSP).) The MYCF inmate handbook includes a grievance procedure, which requires inmates to first drop off grievances — completed "IRSF 101" forms — to the request slips box located in the particular housing unit. (Dilts Aff., at Ex. B.) The MYCF inmate handbook also provides that inmates will receive a written response within 30 days after submitting the IRSF 101 form. (Id.) In addition, the NJSP inmate handbook requires an inmate to first file an administrative remedy form. (B. Smith Aff., at Ex. A.) The inmate then sends the administrative remedy form to the "Office of the Executive Assistant in Charge of Remedy Forms." (Id.) Similar to the MYCF grievance procedure, an inmate should receive a response within 30 days after submitting the administrative remedy form. (Id.)

The plaintiff does not deny the existence of the grievance procedure set forth in these inmate handbooks. Instead, the plaintiff states that he exhausted administrative remedies

13

because the "[a]dministrative [a]ppeal was [the] only remedy to be sought because the time which it was delivered prevented any further courses of action." (Compl., at 5.) The plaintiff, however, did not file any grievance or administrative remedy forms at WYCF, NJSP, or MYCF, concerning the alleged assault or use of excessive force on June 14, 2004. (Jones Aff., at ¶ 7; see B. Smith Aff., at ¶ 7 (explaining that plaintiff had filed grievance forms at NJSP, but none related to alleged assault or excessive force on June 14, 2004); see Dilts Aff., at ¶ 8 (indicating search revealed that plaintiff did not file grievance forms regarding the alleged incident on June 14, 2004, or file any grievance forms (generally) at MYCF after June 14, 2005).)[12]

The plaintiff's allegation that he exhausted administrative remedies through the appeals process of his disciplinary charge is without merit. First, the plaintiff's claim is based on allegations that, inter alia, SCOs Bailey, Scott, Kokowski, Lange, and Slack injured him in violation of his Federal constitutional rights. "The administrative steps that [the plaintiff] took after the incident [— his appeal of Morales's disciplinary hearing decision to Rizzo —] concerned the disciplinary punishment that he received for his own conduct.

---

[12] The plaintiff admits in his opposition brief that he failed to file any grievances about the alleged assault or use of excessive force while at WYCF and NJSP. (See Pl. Br., at 4 (stating there (1) "would [not] be any record of grievances at NJSP;" and (2) "was no record of complaints at [WYCF]").)

14

They did not concern the injuries that he allegedly sustained as a result of [the defendants'] actions." Belton v. Robinson, No. 04-5105, 2006 WL 231608, at *4 (D.N.J. Jan. 30, 2006). Second, as discussed supra, the plaintiff had a variety of methods to seek assistance at MYCF, WYCF, and NJSP, but there is nothing in the record indicating that the plaintiff used any of these readily available methods regarding his claims against the defendants SCO Scott, SCO Bailey, SCO Kokowski, SCO Lange, SCO Slack, and SCO Pecorella.

The plaintiff also asserts that "the fact that the State and the defendants would circle the wagons and close ranks in light of evidence to the contrary clearly shows why [he] had to seek relief outside the administrative agency." (Pl. Br., at 3.) This contention is insufficient to justify the plaintiff's failure to exhaust administrative remedies because he has not argued or demonstrated that (1) "prison officials precluded him from filing administrative requests or appeals so that the defendants are estopped from raising exhaustion as an affirmative defense," or (2) the procedures were unclear, possibly "creating special circumstances to justify excusing the exhaustion requirement." See Ramos v. Smith, No. 04-249, 2005 WL 3054291, at *5 (E.D. Pa. Nov. 14, 2005) (pointing out that Third Circuit Court of Appeals "has concluded that dismissal or summary judgment under [section] 1997e(a) is inappropriate when prison officials have misled or otherwise precluded the inmate from

15

filing or exhausting prison grievance procedures"). Despite the plaintiff's argument to the contrary, he has not provided any evidence that he was prevented from pursuing a remedy through the various grievance procedures.

The plaintiff's final contention that "exigent circumstances" prevented him from filing a formal grievance is also without merit. The plaintiff argues that he failed to file a grievance because the grievance system "takes 30 days to respond." First, the plaintiff's argument implicitly admits that he was aware of the grievance procedures, as the procedures provide for responses within 30 days. Second, regardless of whether the plaintiff believed that he would not receive the relief sought, he was still required to file an initial grievance form or administrative remedy form. See Booth, 532 U.S. at 739-41 (stating exhaustion of all administrative remedies is mandatory whether or not inmate believes such administrative remedies to be effective and even if available administrative processes cannot grant the desired remedy). Third, the plaintiff's argument concerns the time before the alleged assault, during which he spoke to Cole about an alleged threat by SCO Scott. Thus, the plaintiff has not provided the Court with any indication of why he failed to initiate the grievance procedure after he allegedly was assaulted and was the victim of excessive force. Accordingly, the Court, based on the facts and record presented, will grant the part of the defendants' motion

seeking summary judgment regarding his Section 1983 claims against the defendants SCO Scott, SCO Bailey, SCO Kokowski, SCO Lange, and SCO Slack.  In addition, the Court will grant summary judgment to SCO Pecorella on the same ground.

## CONCLUSION

The Court, for the reasons stated supra, concludes that the defendants have demonstrated that the plaintiff failed to exhaust his administrative remedies as required by the PLRA.  Therefore, the Court will (1) grant the defendants' motion without prejudice to the extent that it seeks summary judgment in their favor for failure to exhaust administrative remedies, and (2) grant summary judgment to Pecorella, and (3) enter judgment in their favor.  The Court also denies as moot the part of the motion seeking (1) to dismiss the complaint pursuant to Rule 12(b)(6), and (2) summary judgment (a) on the plaintiff's due process claim, (b) on the plaintiff's Eighth Amendment claim because the claim was precluded by Morales's findings, and (c) on the plaintiff's Eighth Amendment claim because the defendants did not subject the plaintiff to cruel and unusual punishment because, inter alia, the plaintiff failed to show that he suffered more than de minimis injuries.  The Court will issue an appropriate order and judgment.

                                               s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge